**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**EXPRESS ENERGY SERVICES
OPERATING, L.P.,**

              **Plaintiff,**                  **Case No. 2:14-cv-204**
                                          **JUDGE GREGORY L. FROST**
     **v.**                             **Magistrate Judge Norah McCann King**

**HALL DRILLING, LLC, et al.,**

              **Defendants.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court for consideration of the following filings:

(1) a motion for summary judgment (ECF No. 79) filed by Express Energy Services

Operating, L.P. ("Express Energy"), a memorandum in opposition (ECF No. 86) filed by Hall

Drilling, LLC and Hall & Ross Resources ("the Hall Companies"), and a reply memorandum

(ECF No. 102) filed by Express Energy;

(2) a motion to strike (ECF No. 88) filed by Express Energy, a memorandum in

opposition (ECF No. 105) filed by the Hall Companies, and a reply memorandum (ECF No. 109)

filed by Express Energy;

(3) a motion to exclude expert opinions (ECF No. 101) filed by Express Energy, a

memorandum in opposition (ECF No. 107) filed by the Hall Companies, and a reply

memorandum (ECF No. 111) filed by Express Energy;

(4) a motion to strike (ECF No. 103) filed by the Hall Companies, a memorandum in

opposition (ECF No. 108) filed by Express Energy, and a reply memorandum (ECF No. 112)

1

filed by the Hall Companies; and

(5) a motion to strike (ECF No. 106) filed by Express Energy, a memorandum in opposition (ECF No. 110) filed by the Hall Companies, a combined reply memorandum and motion to strike (ECF No. 113) filed by Express Energy, a memorandum in opposition (ECF No. 114) filed by the Hall Companies, and a reply memorandum (ECF No. 134) filed by Express Energy.

The Court shall address each motion in turn.

## I. Background

The Hall Companies are in the oil and gas business.[1]  As part of their business activities, they own or operate two oil and gas wells, designated as Hercher South No. 1H Well and Hercher South No. 2H Well, both of which are located in Monroe County, Ohio.  Beginning in November 2013, the Hall Companies entered into a contract with Express Energy that called for Express Energy to furnish labor, materials, machinery, and supplies in connection with the drilling and use of these wells.

When a dispute arose regarding the wells, detailed below, Express Energy filed suit to recover amounts allegedly due under the contract.  Express Energy asserts claims for breach of contract, on account, and *quantum meruit*, and originally sought foreclosure of a mechanics' lien on mineral interests and related property interests.  The Hall Companies in turn assert counterclaims for breach of contract, negligence, and fraud in connection with Express Energy's

---

[1]  There are three defendants/counter claimants in this action: Hall Drilling, LLC, variously identified in the briefing as either a West Virginia limited liability company or a Delaware limited liability company; Hall Drilling, LLC, an Ohio limited liability company; and Hall & Ross Resources, identified as an Ohio partnership.  For ease of reference, the Court shall refer to these entities collectively.

alleged improper testing of a pipe.  The Hall Companies allege that the services provided by Express Energy included running well casing at the Hercher South No. 1H Well and performing "Torq-Tek" testing.

Events surrounding this testing serve as the basis for the parties' dispute.  On November 9, 2013, Express Energy torqued together 396 joints of casing at the Hercher South No. 1H Well, while a third party drove the torqued joints down the previously drilled well.  The process involved joining 396 pipes, approximately 40 feet in length, with joints between each pipe. Express Energy Torq-Tek tested each joint before the corresponding section of pipe was driven into the well.  When a joint failed the Torq-Tek test, Express Energy was required to take the joint apart and re-make the joint so that it would pass the test.  The Hall Companies allege that, although joint 216 failed the Torq-Tek test, Express Energy's employee indicated that the joint had been properly made up and that the casing team should proceed with the next joint.  Express Energy completed all 396 joints.

On November 10, 2013, the pumping of concrete to seal and hold the well casing in place commenced.  Joint 216 allegedly failed during this process.  The well casing was removed one section at a time, until it was determined that joint 216 had separated.  The remainder of the casing—joints one through 215—remained in the ground, with the top of the remaining casing at a depth of approximately 7,500 feet.  After several failed efforts to reattach the joints, the Hall Companies hired a company, Baker Hughes, to use a "harpoon" or "cut and pull spear" to puncture the top section of joint 215 and unscrew it from the pipe joint beneath it.  Baker Hughes was able to remove joint 215 from the well on November 14, 2013.

After the Hall Companies allegedly failed to pay Express Energy in accordance with a

contract, Express Energy filed a lawsuit in the Court of Common Pleas in Monroe County, Ohio. Of the claim initially asserted, three remain: breach of contract, action on account, and quantum meruit.  (ECF No. 1 ¶¶ 21-41.)  The Hall Companies subsequently removed the action to this Court in February 2014 and pursue counterclaim damages for what they contend is Express Energy's impropriety.  (ECF No. 1.)  The Hall Companies assert three counterclaims: breach of contract, negligence, and fraud.  (ECF No. 13 ¶¶ 23-44.)  Express Energy has filed a motion for summary judgment on the counterclaims (ECF No. 79), and both sides have filed multiple motions to strike related to that summary judgment motion and to a possible trial (ECF Nos. 88, 101, 103, 106, 113).  The parties have completed briefing on the motions, which are ripe for disposition.

## II.  Miscellaneous motions

### A.  Motion to strike expert opinions of Michael G. Burns, PE (ECF No. 88)

Express Energy seeks to preclude the Hall Companies from using Michael G. Burns, PE as an expert and asks this Court to strike an affidavit submitted by Burns.  Express Energy asserts that the Hall Companies failed to properly and timely identify Burns as an expert.

Review of the docket indicates that, on October 9, 2014, the Magistrate Judge previously ordered:

> The reports of primary experts must be produced no later than November 3, 2014; the reports of rebuttal experts must be produced no later than December 19, 2014.  All discovery must be completed no later than January 30, 2015.

(ECF No. 61, at Page ID # 409.)  It is undisputed that the Hall Companies did not produce Burns and his expert report until January 19, 2015.

The Hall Companies argue that they properly and timely produced Burns, however,

because he is simply a rebuttal expert to respond to Dr. Robert S. Carbonara, a witness that

Express Energy produced as one of its rebuttal experts by the December 19, 2014 deadline. To

support this contention, the companies direct the Court to Federal Rule of Civil Procedure 26.

That rule provides in relevant part:

> *Time to Disclose Expert Testimony*. A party must make these disclosures at the times
> and in the sequence that the court orders. Absent a stipulation or a court order, the
> disclosures must be made:
>    . . .
>
>    (ii) if the evidence is intended solely to contradict or rebut evidence on the
> same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within
> 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(D)(ii). The Hall Companies contend that Burns falls within this rule.

The Magistrate Judge's October 9, 2014 Order is silent in regard to witnesses intended to

rebut a rebuttal expert. The Hall Companies argue that this means that the default provision of

Rule 26(a)(2)(D)(ii) applies, which means that their identification of Burns and production of his

report were proper and timely. This approach tracks the majority view on what to do when a

scheduling order is silent on the issue: a scheduling order's "failure to set a deadline for the

disclosure of rebuttal expert witness reports does not mean that rebuttal expert witness reports

are not permitted. It simply means that rebuttal expert witness reports must be submitted within

the period set forth in Rule 26(a)(2)(D)(ii)." *Teledyne Instruments, Inc. v.* Cairns, at *17

(collecting case supporting the majority rule); *see also Hennigan v. Gen. Elec. Co.*, No. 09-

11912, 2014 WL 4415954, at *1 (E.D. Mich. Mar. 25, 2014) (following *Teledyne* holding). The

Court agrees with the majority approach and concludes that the Hall Companies properly and

timely identified Burns and produced his expert report.

This is not to say that the motion to strike is wholly without merit. Express Energy

5

argues that Burns has exceeded the scope of rebutting the report and opinions of Dr. Carbonara by opining on issues beyond metallurgical opinions.  Because he is a rebuttal expert, Burns can properly rebut Dr. Carbonara by responding to the content of that expert witness' report and opinions.  But as a rebuttal expert, Burns cannot exceed the scope of simply responding to Dr. Carbonara and the metallurgical issues.  Any opinions offered that exceed this limited scope are impermissible.

The Court **GRANTS IN PART** and **DENIES IN PART** the motion to strike Burns. (ECF No. 88.)

### B.  Motion to exclude expert opinions of Michael Chamberlain (ECF No. 101)

Express Energy seeks to preclude Michael Chamberlain from serving as an expert witness on behalf of the Hall Companies.  Express Energy argues that such exclusion is warranted because the Hall Companies failed to provide an expert report from Chamberlain as required by Federal Rule of Civil Procedure 26(a)(2)(B).  The Hall Companies in turn assert that Chamberlain did not need to produce an expert report because he is a hybrid witness under Rule 26(a)(2)(C), which means that the produced summary of Chamberlain's anticipated testimony was sufficient.

This Court agrees with Express Energy that Chamberlain cannot provide expert opinion testimony.  At the time of the underlying events, Chamberlain was not employed by the Hall Companies, he was not on site for the events in question but became involved only after the casing separated, and he offers opinions based on his subsequent review of information.  Despite all of this, the Hall Companies offer Chamberlain as an expert to provide an expert opinion.  The scope, substance, and source of his opinions, however, push him into Rule 26(a)(2)(B), not Rule

26(a)(2)(C).  Chamberlain was not exempt from the report requirement.

Previously, this Court held that "under the circumstances of this case, a reasonable person *would* have anticipated litigation by the time [a hired company] speared joint 215 from the well and *should* have known that joint 215 may be relevant to the litigation."  (ECF No. 82, at Page ID # 750.)  The Court also explained that the when the Hall Companies "inspected and photographed joint 215 after it had been speared from the well . . . they should have known at that time that joint 215 would be relevant to future litigation."  (*Id.* at Page ID # 751.)  Similarly, the facts support that a reasonable person would have anticipated litigation when Chamberlain was dispatched to the well site following the casing failure and should have known that his opinions would be relevant to any litigation.  Chamberlain was not actually involved in the events giving rise to this litigation, but was instead part of the after-the-fact contingent.  His function was to decide what happened and why, which are the core issues involved in this action. Chamberlain was thus recruited by the Hall Companies to provide his expert opinion–first, to them, and subsequently, in this litigation.

Chamberlain's function is notable.  It places him in the category of "an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony."  *Call v. City of Riverside*, No. 3:13-cv-133, 2014 WL 2048194, at *5 (S.D. Ohio May 19, 2014) (quoting *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011)).  In other words, it places him under Rule 26(a)(2)(B).  *See id.* (recognizing that Rule 26(a)(2)(C) is limited to experts who are involved in the events giving rise to the litigation). *See also Ulbrick v. UBR Prods.*, No. 08-cv-13764, 2011 WL 500034, at *4 (E.D. Mich. Feb. 8, 2011) (holding that an after-the-fact expert falls under Rule 26(a)(2)(B), regardless of whether

the expert was compensated). Consequently, Chamberlain falls into the category of an excluded expert in regard to events preceding his involvement. In regard to those events with which he was actually involved and onward, he is a fact witness who could also offer expert opinion solely as to those events.

The Hall Companies argue that if Chamberlain falls under Rule 26(a)(2)(B), the failure to produce an expert report was substantially justified and harmless. This contention seeks to invoke the safety valve included in Federal Rule of Civil Procedure 37(c)(1). That rule provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). But given the role that Chamberlain played in the underlying proceedings, this Court cannot accept that the Hall Defendants' position on his status was substantially justified.

The Hall Companies have also not met their burden of proving harmlessness. It is well settled that a Rule 26(a)(2)(B) expert report " 'must "set forth facts" and, in doing so, outline a line of reasoning arising from a logical foundation.' " *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 657 (6th Cir. 2005)). Such a report " 'must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.' " *Id.* (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)). The Chamberlain summary produced falls far short of what would have been contained in an expert report, precluding deeming the failure to produce harmless. *See id.* at 272

8

(holding that production of a deficient summary instead of an expert report was not harmless).

The Court **GRANTS** the motion to exclude Chamberlain as an expert witness on alleged causation and negligence that occurred prior to his involvement.  (ECF No. 101.)  In light of the failure to produce a report, Chamberlain can offer testimony from his personal knowledge, such as what he saw at the well site and the remediation effort in which he took part.  He can also testify as to what Express Energy did while he was involved and what it means.  But Chamberlain cannot offer an opinion on the meaning of his observations at the well site or the meaning of the Torq-Tek data as they relate to Express Energy's conduct prior to his involvement; pre-involvement causation and negligence are off limits.

### C.  Motion to strike affirmative defense (ECF No. 103)

On February 23, 2015, Express Energy filed a notice that it is asserting the affirmative defense set forth in Ohio Revised Code § 2307.23.  (ECF No. 85.)  That statute provides:

> [I]t is an affirmative defense for each party to the tort action from whom the plaintiff seeks recovery in this action that a specific percentage of the tortious conduct that proximately caused the injury or loss to person or property or the wrongful death is attributable to one or more persons from whom the plaintiff does not seek recovery in this action.  Any party to the tort action from whom the plaintiff seeks recovery in this action may raise an affirmative defense under this division at any time before the trial of the action.

Ohio Rev. Code § 2307.23(C).  Relying on this language, Express Energy indicates that it will request that the jury complete interrogatories on the counterclaims indicating what percentage of tortious conduct, if any, proximately caused injury or loss to the Hall Companies that is attributable to each person or entity from whom the Hall Companies do not seek recovery in this case.

The Hall Companies seek to strike Express Energy's notice on the grounds that because it

is untimely, Express Energy has waived the affirmative defense.  The notice was untimely, the

Hall Companies argue, because Express Energy did not assert it until after the extended

discovery deadline of January 30, 2015, and the July 8, 2014 deadline to amend the pleadings.

Additionally, the Hall Companies assert that Express Energy was required to raise the

affirmative defense in its answer to the counterclaims pursuant to Federal Rule of Civil

Procedure 8, which provides that "[i]n responding to a pleading, a party must affirmatively state

any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c)(1).

      Express Energy counters that the state statute provides for raising the affirmative defense

"at any time before the trial of the action."  The company also insists that, even if Rule 8(c)(1)

trumps the statute, it should be allowed to raise the affirmative defense because the Hall

Companies have been on notice that Express Energy would pursue an empty chair defense and

point the finger at non-parties.

      This Court disagrees with Express Energy.  It is well settled that "[i]n federal diversity

actions, state law governs substantive issues and federal law governs procedural issues."  *Legg v.

Chopra*, 286 F.3d 286, 289 (6th Cir. 2002).  Thus, "state law defines the nature of defenses"; in

other words, state law governs whether a defense is an affirmative defense.  *Roush v. Stone*, No.

2:08-cv-141, 2010 WL 3037003, at *2 (S.D. Ohio Aug. 2, 2010).  But "[t]he question of whether

[a party has] waived [a] defense by failing to assert it in a timely manner is governed by federal

law."  *Id.* (citing *Montgomery v. Wyeth*, 580 F.3d 455, 468 n.7 (6th Cir. 2009)).  Under federal

law, the " '[f]ailure to plead an affirmative defense in the first responsive pleading to a complaint

generally results in a waiver of that defense."  *Id.* (quoting *Horton v. Potter*, 369 F.3d 906, 911

(6th Cir. 2004)).  This general rule is subject to the qualification that " '[a] defendant does not

waive an affirmative defense if the defense is raised at a time when plaintiff's ability to respond is not prejudiced.' " *Id.* (quoting *R.H. Cochran & Assoc., Inc. v. Sheet Metal Workers Int'l Assoc.*, 335 F. App'x 516, 519 (6th Cir. 2009).

Here, the Ohio statute's "at any time" language is unquestionably procedural, not substantive, and its application in no way promotes forum shopping or runs afoul of similar concerns that might favor importing the procedural rule into this federal case.  Express Energy could and should have raised the affirmative defense at the time required by Rule 8(c)(1), and it failed to do so.  The federal rules do not promote hide-the-ball litigation, and Express Energy incurs the consequences of failing to adhere to the rules.

Additionally, permitting reliance on the affirmative defense now would be prejudicial to the Hall Companies.  The companies argue that prejudice exists if the notice is not stricken because the discovery deadline has passed and, consequently, they cannot adequately address the affirmative defense.  Express Energy rejects this contention on the grounds that the Hall Companies have long been on notice that Express Energy might look to non-parties to evade some or all liability.  But service of a third-party subpoena in discovery and disclosure of an expert witness's opinion pointing at another entity does not necessarily mean that Express Energy is pursuing an empty chair defense.  Moreover, Express Energy's argument that the Hall Companies would not have conducted discovery anyway draws too speculative an inference to support the conclusion of no prejudice.  The fact that the Hall Companies apparently elected to conduct limited discovery in particular areas does not invariably mean that they would have continued to do so on the § 2307.23(C) affirmative defense.  Litigation strategy varies for a multitude of reasons.

11

The Court **GRANTS** the motion to strike.  (ECF No. 103.)

**D.  Motion to strike Hall affidavit paragraphs (ECF No. 113)**

Express Energy seeks to strike nine paragraphs from an affidavit by Michael Hall that the Hall Companies attached to a memorandum in opposition to Express Energy's final motion to strike.  (ECF No. 110, at Page ID # 2409-414.)  Hall stated in previous deposition testimony that he was not an expert on the Torq-Tek system but had had the process and resulting data explained to him by Michael Chamberlain.  Express Energy argues that Hall should therefore be precluded from offering the interpretation and opinions on the Torq-Tek data that he offers in the nine paragraphs at issue.

The Hall Companies disagree.  They first argue that Express Energy has failed to identify specifically which portions of the nine paragraphs are contradictory, but this argument is of little weight.  The briefing makes clear that Express Energy seeks to strike all of the Torq-Tek content.  The Hall Companies next argue that there are no direct contradictions between Hall's deposition testimony and his affidavit.  They dispute that simply because Hall is not an expert means that he cannot testify on his understanding of and opinions concerning the testing information.

There is no inconsistency between the depositions and the affidavit.  Express Energy's issue with Hall goes more to his qualifications to offer an expert opinion as opposed to the affidavit disagreeing with the deposition.  This raises concerns of admissibility and weight rather than of inconsistency.  As such, the specific inconsistency premise upon which Express Energy purports to base its motion to strike is not well taken.  *See Carson v. Ford Motor Co.*, 413 F. App'x 820, 821 n.1 (6th Cir. 2011) ("On summary judgment, the district court should not refuse

to consider a statement contained in an affidavit that is not directly contradicted by prior deposition testimony."); *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 963 (6th Cir. 2007) (recognizing that in the absence of a direct contradiction between a prior deposition and a subsequent affidavit, a district court should not strike the affidavit unless it tries to create a sham fact issue). Moreover, given the analysis below on the final motion to strike, any inconsistency between Hall's deposition and his affidavit simply does not matter.

The Court **DENIES** the motion to strike the nine paragraphs from Hall's affidavit. (ECF No. 113.)

### E. Motion to strike the Hall Companies' hybrid experts (ECF No. 106)

Express Energy seeks to strike the opinions and testimony of four hybrid experts offered by the Hall Companies: Michael Hall, John Calkins, Audie Miller, and Glenn Carter. Each witness is apparently offered for the purpose of testifying about the cause of the casing separation and their opinion of the Torq-Tek testing. Express Energy asserts that all four witnesses admitted in their depositions that they lacked knowledge about the Torq-Tek software used during the casing run and that they lack the qualifications and specialized knowledge to provide a causation opinion. Thus, Express Energy concludes, the Court should exclude each witnesses' testimony as inadmissible under Federal Rule of Evidence 702 and the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The United States Supreme Court held in *Daubert* that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert,* 509 U.S. at 597. The relevant Federal Rule of

13

Evidence is Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony, but also to other types of expert testimony based on technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold. First, the Court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994).

In *Daubert*, the Supreme Court set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable. They are:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton Cnty. Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Supreme Court subsequently stressed in *Kumho Tire* that in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of these *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert*, 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The United States Supreme Court and courts of appeals have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise or that are not founded on a reliable methodology. *See, e.g., Kumho Tire Co., Ltd.*, 526 U.S. at 154-55 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); *Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999) (holding that a city fire

captain, although qualified as an expert on fire investigation and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1317-19 (11th Cir. 1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon breast implant case); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press).

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk & W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

Against this backdrop, Express Energy directs this Court to deposition testimony in which each of the four witnesses admits that he is not an expert on Torq-Tek software and technology. Express Energy asserts that, as a result, these witnesses fail to qualify as experts who can opine on causation. The Hall Companies in turn argue that the Court should permit their hybrid witnesses to testify because they have extensive experience in the oil and gas industry that qualifies them under *Daubert* and Rule 702. In their reply memorandum, Express Energy disagrees, drawing a distinction between experience in the oil and gas industry and

16

specialized knowledge or familiarity with the Torq-Tek system.

The oil and gas industry is one in which experience is often the best if not the primary teacher. The undersigned grew up in the industry and worked well sites for years. The targeted witnesses' experience certainly qualifies them to opine on industry standards regarding running a well casing and how crews should perform the tasks and procedures involved at the well site. The fact that these witnesses lack sufficient knowledge to opine on the Torq-Tek testing software, metallurgy, or the engineering of downhole events only disqualifies them from offering expert opinions on those narrow, particularized areas of concern. These witnesses remain able to testify on general industry standards for running a well casing and whether the events here met or failed to meet those standards. To the extent that the witnesses' testimony on industry standards might spill over into the otherwise precluded topics, the overlap is a weight and not an admissibility issue. For example, although the witnesses can opine on whether there was proper tightening here in conjunction with industry standards, they cannot opine on whether the interpreted Tor-Tek data supports or refutes their opinion.

The Court **GRANTS IN PART** and **DENIES IN PART** Express Energy's motion to strike the Hall Companies' hybrid experts. (ECF No. 106.)

### III.  Summary judgment motion

**A.  Standard involved**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make

a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Discussion**

Express Energy argues that it is entitled to summary judgment on all three of the Hall Companies' counterclaims because the Hall Companies cannot prove the causation element of each claim. This Court disagrees.

In their first counterclaim, the Hall Companies assert that Express Energy breached a contract to perform various duties, including the obligation to provide proper Torq-Tek testing. To prevail on this claim, the Hall Companies must prove (1) the existence of a contract, (2) performance by the Hall Companies, (3) breach by Express Energy, and (4) damage or loss to the Hall Companies as a result of the breach. *See Asset Mgmt. One LLC v. U.S. Nat'l Ass'n*, 569

F. App'x 438, 441 (6th Cir. 2014). Assuming for the sake of argument only that a contract exists, Express Energy targets the causation component of the fourth element.

In their second counterclaim, the Hall Companies assert that Express Energy was negligent in regard to its Tork-Teq examination and consequent approval of the well casing that subsequently failed. To prevail on this claim, the Hall Companies must prove that (1) Express Energy owed the Hall Companies a duty of care, (2) Express Energy breached that duty, and (3) the breach proximately caused the Hall Companies' injury. *Mid-Continent Ins. Co. v. Coder*, 563 F. App'x 422, 427 (6th Cir. 2014) (citing *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 122, 909 N.E.2d 120, 122-23 (2009)). Express Energy targets the causation component of the third element.

Finally, in their third counterclaim, the Hall Companies assert that Express Energy made fraudulent representations regarding the results of the Tork-Teq testing performed on the well casing. To prevail on this claim, the Hall Companies must prove:

> "[1] a representation or, where there is a duty to disclose, concealment of a fact, [2] which is material to the transaction at hand, [3] made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, [4] with the intent of misleading another into relying upon it, [5] justifiable reliance upon the representation or concealment, and [6] a resulting injury proximately caused by the reliance."

*Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447 (6th Cir. 2014) (quoting *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 449 (6th Cir. 2012); internal quotation marks omitted). Express Energy targets all of these elements while emphasizing that the Hall Companies cannot prove that it caused the casing joints to separate.

Given the foregoing, the core issue in this litigation is whether acts or omissions by Express Energy were the proximate cause of the casing separation. Express Energy contends

that it is entitled to summary judgment because none of the Hall Companies' experts can testify to a reasonable degree of scientific certainty or reliability as to the proximate cause of the casing separation.  Instead, Express Energy asserts, the experts offer up a multitude of possible explanations for the separation, some of which the company contends are unreliably based on different counts of how many joints were involved.

Under Ohio law, "the expression of probability is a condition precedent to the admissibility of expert opinion regarding causation" and "it relates to the competence of such evidence and not its weight."  *Stinson v. England*, 69 Ohio St.3d 451, 455, 633 N.E.2d 532, 537 (1994).  This means that an expert opining on causation must be able to express his or her opinion in terms of a sufficient probability–in other words, more than a fifty percent likelihood of causation.  *See id.*

Review of the evidence indicates that the Hall Companies have produced sufficient expert testimony on causation to evade summary judgment.  Steve Taylor, an expert for the Hall Companies, testified that although he had insufficient information from which he could pinpoint how the casing joints specifically separated, he was able to conclude that any of three separate reasons for the separation were the result of the joint not being fully made up.  Reviewing his deposition testimony, Taylor later stated in an affidavit:

> I identify for the different causes given that all of them occur only when a joint is improperly screwed together.  Hence, while the exact combination and sequence of events is unknown because it occurred deep inside the well, the order and combination is irrelevant to cause of the separation event – i.e.[,] an improperly screwed-together connection made-up by Express.

(Taylor Aff. ¶ 9, ECF No 86-1, at Page ID # 802.)  This testimony, expressed to a reasonable degree of certainty, contradicts Express Energy's proposition that the Hall Companies cannot

offer an expert who has conclusively opined on the cause of the casing separation. Taylor also explained that the joint count varied from expert to expert because they were counting or defining joints differently, with the end result being that all of the experts were still talking about the same point in the casing, regardless of the number each assigned to it. In other words, everyone agrees that joint # 216 is where the connection failed.

The central issue in this litigation is whether Express Energy caused or failed to prevent the separation. This echoes the inquiry in *Jahn v. Equine Services, PSC*, 233 F.3d 382, 390 (6th Cir. 2000) ("The central issue in this case is whether Equine Services caused or failed to prevent Night Passage's untimely demise."). The Sixth Circuit recognized in *Jahn* that "[i]n order to be admissible on the issue of causation, an expert's testimony need not eliminate all other possible causes of the injury." *Id.* Similar to the experts in *Jahn*, Taylor has identified what he believes to be the probable cause of the injury based on his count of the pipe casings. This is enough.

The Court is cognizant that other expert testimony points to other causes. But it is well settled that "[c]ourts may not resolve credibility disputes on summary judgment." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Given that weighing of the evidence is not permitted at this juncture and that the mere existence of a contrary opinion does not undercut Taylor's opinion for summary judgment purposes, the Court must conclude that the Hall Companies have presented sufficient evidence of causation to survive summary judgment. There is a genuine dispute over a material fact that leads to trial.

This reasoning precludes summary judgment on the negligence counterclaim. The breach of contract counterclaim thus logically also survives. *See In re Atlas Concrete Pipe, Inc.*,

21

668 F.2d 905, 908-09 (6th Cir. 1982).  Finally, Express Energy cannot obtain summary judgment

on the fraud counterclaim.  Evidence suggests that Express Energy misrepresented its services

and test results and that the Hall Companies relied on those misrepresentations.  Summary

judgment is not warranted.

### IV.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

motion to strike Burns (ECF No. 88), **GRANTS** the motion to exclude Chamberlain as an expert

witness on causation and negligence that occurred prior to his involvement (ECF No. 101),

**GRANTS** the motion to strike an affirmative defense (ECF No. 103), **GRANTS IN PART** and

**DENIES IN PART** the motion to strike the Hall Companies' hybrid experts (ECF No. 106),

**DENIES** the motion to strike Hall affidavit paragraphs (ECF No. 113), and **DENIES** the motion

for summary judgment (ECF No. 79).

**IT IS SO ORDERED.**

                                        _____/s/ Gregory L. Frost_____
                                        GREGORY L. FROST
                                        UNITED STATES DISTRICT JUDGE